The People of the State of New York ex rel. Thomas J. Kelly, Relator, *v.* George D. Scott and Others, Members Composing the Examining Board of Plumbers of the City of New York, Respondents.

*Return to a writ of certiorari — examination by the examining board of plumbers under chapter 602 of 1892 — rights of the applicant — such board acts judicially — review by certiorari — undenied allegations in the petition deemed admitted.*

Where the determination of a board as to the qualifications of an applicant, founded on answers to questions relating to the science or art of a profession, trade or business, is challenged by a writ of certiorari, the return of the board should show wherein the answers are incorrect or defective.

An applicant for a certificate of competency to conduct the business of a master plumber under the statute (Chap. 602 of the Laws of 1892) is entitled to be examined as to his experience in the plumbing business as well as to his knowledge of the theory or science of the trade, and in case the examining board of plumbers refuses so to examine him and fails to consider his experience when it makes its final determination, the command of the statute is disobeyed and an error prejudicial to the applicant is committed.

The statute requires the board to act upon the evidence relative to the experience and qualifications of the applicant. and in making its examination and determination it acts, not ministerially, but judicially, and its determination may be reviewed by the courts by means of a writ of certiorari.

Undenied allegations contained in a petition for a writ of certiorari are to be taken as true, and where in a petition certain specific and grave charges are made against the members of the examining board of plumbers, and it is alleged therein that the determination of the board sought to be reviewed was influenced by improper and illegal motives, the allegation in the return that the board's determination was based on their best judgment and discretion is entitled to little or no weight.

CERTIORARI issued out of the Supreme Court and attested on the 2d day of December, 1893, directed to George D. Scott, John McKenna, Horace Loomis, Joseph O'Brien and Michael Ryan, members composing the examining board of plumbers of the city of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their acts and proceedings, with all things appertaining thereto in relation to the denial of the relator's application for a certificate of competency as master plumber.

*Bernard J. Kelly*, for the relator.

*Francis M. Scott* and *Terence Farley*, for the respondents.

FOLLETT, J.:

By chapter 602, Laws of 1892, an "examining board of plumbers" is created in the cities of New York, Brooklyn and Albany, and "an examining and supervising board of plumbers and plumbing" in all other cities of the State. By the 4th section of the act the powers and the duties of such boards are defined:

"Sec. 4. The several boards of examiners constituted under this act shall have power, and it shall be their duty:

"1. *Meetings.*— To meet at stated intervals in their respective cities; they shall also meet whenever the board of health of such city or the mayor thereof shall, in writing, request them so to do.

"2. *Examinations.*— To have jurisdiction over and to examine all persons desiring or intending to engage in the trade, business or calling of plumbing as employing plumbers in the city in which such board shall be appointed, with the power of examining all persons applying for certificates of competency as such employing or master plumbers or as inspectors of plumbing, to determine their fitness and qualifications for conducting the business of master

plumbers or to act as inspectors of plumbing, and to issue certificates of competency to all such persons who shall have submitted to and passed a satisfactory examination before such board, and shall be by it determined to be qualified for conducting the business as employing or master plumbers or competetent to act as inspectors of plumbing. * * *

"Sec. 5. Any person desiring or intending to conduct the trade, business or calling of a plumber or of plumbing, in any of the cities of this State as employing or master plumber, shall be required to submit to an examination before such board of examiners as to his experience and qualifications in such trade, business or calling; and after the first day of March, eighteen hundred and ninety-three, it shall not be lawful in any city of this State for any person to conduct such trade, business or calling, unless he shall have first obtained a certificate of competency from such board of the city in which he conducts or proposes to conduct such business.

"Sec. 6. On and before the first day of March, eighteen hundred and ninety-three, every employing or master plumber carrying on his trade, business or calling in any of the cities of this State, shall register his name and address at the office of the board of health of the city in which he shall conduct such business under such rules and regulations as the respective boards of health of each of the cities of this State shall respectively prescribe, and thereupon he shall be entitled to receive a certificate of such registration, provided, however, that such employing or master plumber shall, at the time of applying for registration, hold a certificate of competency from an examining board. * * * And after the first day of March, eighteen hundred and ninety-three, it shall not be lawful for any person to engage in or carry on the trade, business or calling of an employing or master plumber in any of the cities of this State, unless his name and address shall have been registered as above provided."

By chapter 66 of the Laws of 1893, which was passed and took effect February 28, 1893, the word "September" was substituted for the word "March" in sections 5 and 6. Otherwise the sections are unchanged.

On the 27th of February, 1893, the relator filed a written application with the examining board of plumbers of the city of New

York for a certificate of competency to conduct the business of a master plumber in that city. This fact is alleged in the application and is admitted by the return.

Among other things, the respondents, in obedience to the writ, returned as follows:

"*Third.* That thereafter the above-named relator presented himself for examination to these respondents for a certificate of competency under the provisions of the statute, and thereupon certain questions in writing were propounded to him, a copy whereof is hereto annexed marked 'B.'

"*Fourth.* That to said questions in writing so propounded as aforesaid the said relator made answers in writing, a copy whereof is hereto annexed marked 'C.'

"*Fifth.* That thereafter and after a due consideration of the questions propounded and answers given as aforesaid, and the plan for the drainage of a building accompanying the same, which was a part of said examination, and pursuant to the power and authority conferred upon them by the aforesaid statute, these respondents determined, not arbitrarily or capriciously, as alleged by the relator, but in the exercise of their best judgment and discretion, and in the manner provided by said statute, that the relator herein was not qualified for conducting the business as employing or master plumber, or competent to act as inspector of plumbing, and thereupon passed the following resolution:

"'*Resolved,* That the application of Thomas J. Kelly for a certificate of competency be rejected.'"

It will be observed that neither the date of the relator's examination nor the date of the determination by the board is returned, but it is alleged in the application and not denied in the return that an official notification in writing of the determination has never been furnished to the relator, though frequently demanded, and that four calendar months have not elapsed since the determination was made.

Twenty questions were propounded to the relator which are annexed to the return and marked " B." The relator answered all of the questions in writing, which answers are annexed to the return and marked " C," but it is not alleged in the return that any of the questions were incorrectly answered. The eighth and ninth questions relate to mensuration.

" 8. How would you determine the area of a pipe 6 in. in diameter, and one 3 in. in diameter ? "

Answer of relator. " To determine the area of 6" or a 3" pipe you must square the diameter and multiply 1729 x."

If this question calls for the rule for determining the area of pipes the diameters of which are known, an incorrect answer was returned. The arithmetical rule is : " Multiply half the diameter by half the circumference, and the product is the area ; or, which is the same thing, multiply the square of the diameter by .785398, and the product is the area."

" 9. What are the cubic contents of a tank 6 ft. long, $4\frac{1}{2}$ ft. wide and $2\frac{1}{2}$ ft. high ? How much water in gallons would said tank hold and what would water weigh ? "

Answer of relator. " 9. Cubic contents of a tank 6 ft. long, $4\frac{1}{2}$ wide, $2\frac{1}{2}$ high. The tank will hold $504\frac{72}{77}$ gall. The tank will be 81 cubic ft. The weight of it is $5,062\frac{1}{2}$ lbs."

A tank of the dimensions given contains $67\frac{1}{2}$ cubic feet, but it holds $504\frac{72}{77}$ gallons, as stated in the answer. The number of gallons being correctly stated, it may well be that the relator's figures were misread.

Under our statute a wine gallon of distilled water contains 231 cubic inches and weighs 8.355 pounds avoirdupois, which would make the total weight of $504\frac{72}{77}$ gallons 4,218.732 pounds. The weight of a gallon of undistilled water is more.

The question is indefinite in not defining the kind of gallon referred to, whether imperial or statutory, or whether the weight is to be computed upon the basis of distilled or undistilled water. The answer given seems to be as accurate as the question is definite.

" 20. Why does a pump draw water and how far can it be drawn ? "

Answer of relator. " 20. Pump draws water by the action of the piston, causing a vacuum, the vacuum causing siphon, and the water runs through. A pump can draw 34 feet, but for practical use 24 or 25 ft. is enough."

We assume that the question relates to the common or suction pump, and if it does the answer is approximately correct. The height to which such a pump will raise water depends upon the altitude above the level of the sea at which it is operated, and it is

stated in scientific works to be thirty-two feet (12 Ency. Britan. [8th ed.] 174), thirty-three and eight-tenths feet (14 Am. Clyc. 82), and at not more than thirty-four feet (Wells' Nat. Ph. 182 ; Avery's Nat. Ph. 176).

The other questions relate to the mode of doing plumbing, and, as before stated, it is not asserted that any of the answers are incorrect.

When the determination of a board as to the qualifications of an applicant, founded on answers to questions relating to the science or art of a profession, trade or business, is challenged by a writ of certiorari, the return of the board should show wherein the answers are incorrect or defective.

It is alleged in the petition that the relator has been engaged in the business of plumbing for the past thirteen years at 406 Canal street, which is not denied. The relator certainly had had considerable experience in his trade.

Section 5 of chapter 602, above quoted, requires the board to examine an applicant " as to his experience and qualifications in such trade, business or calling." None of the questions propounded relate to the experience of the relator, and it does not appear that he was examined in respect thereto. An applicant for a certificate under the statute is entitled to be examined as to his experience in the plumbing business as well as to his knowledge of the theory or science of the trade, and in case the board refuses so to examine him and fails to consider his experience when it makes its final determination, the command of the statute is disobeyed, and an error prejudicial to the applicant is committed. The statute requires the board to act upon evidence relative to the experience and qualifications of the applicant, and in making its examination and determination it acts, not ministerially, but judicially, and its determination may be reviewed by the courts by means of a writ of certiorari.

Among other allegations the relator's petition contains the following :

" IV. That said members composing said board, or a majority of them, did not exercise their judgment and discretion upon examination and evidence, but refused to exercise their discretion on deponent's application, for the alleged reason that deponent had no place of business, which was contrary to the fact, and said members

composing said board, or a majority of them, acting not judicially, but arbitrarily and upon illegal grounds and principles, to the prejudice of deponent, denied, without good or valid reasons therefor, deponent's application for said certificate of competency.    *    *    *

"V. That deponent has never received an official notification in writing of said board's determination in his case, although frequently demanded, and deponent has lost thousands of dollars by having been forced by said board to give up his plumbing business and has been 'boycotted' by said board.

"VI. That Joseph O'Brien, one of the members composing said board, told deponent after deponent applied as aforesaid for said certificate: 'I will vote against your obtaining a certificate of competency because you interfere with my plumbing business and secure my customers for yourself; I know you are a qualified and competent plumber, but I will see to it that you do not obtain a certificate from the board, and the Supreme Court has no power to interfere with the board's action in refusing you or any other plumber a certificate, no matter how well qualified you or they may be.'

"VII. That John McKenna, another of the members composing said board, told deponent: 'I will vote against your obtaining a certificate of competency because you have refused to employ men from my society, the New York Journeymen Plumber Benevolent and Protective Association, and because you have refused to join the Master Plumbers' Association.'

"VIII. That George D. Scott, Chairman of said Board, told deponent: 'I know nothing about the merits of your application. I will leave Messrs. McKenna and O'Brien to decide whether the Board will grant you a certificate. They can settle the matter as they please.'"

The board in return denies that it acted "arbitrarily or capriciously as alleged by the relator," and denies that a certificate was refused the applicant because "he had no place of business, or because he would not join the Master Plumbers' Association or employ men from the New York Journeymen Plumbers' Benevolent and Protective Association." But the averments in paragraphs 6, 7 and 8, that the action of O'Brien, McKenna and Scott was influenced by improper and illegal motives, are not denied, nor is it anywhere denied that these three persons made the statements attributed to

them, and, in the face of such specific and grave charges, undenied, the allegation in the return, that the board's determination was based on "their best judgment and discretion," is entitled to little or no weight. Had the board been able to have denied truthfully these specific and highly-incriminating statements it would undoubtedly have done so. If these statements were made by three of the members of the board it is presumptively shown that the plaintiff's case was determined upon illegal instead of upon valid and honest grounds. Undenied allegations in the petition are to be taken as true. (*People ex rel. Peck* v. *Commissioners*, 106 N. Y. 64.)

The examining board of plumbers of this city is an important body, created to protect the health of the public, and if its great powers are wisely and impartially exercised, pursuant to fixed and proper regulations, it may be productive of good, but, on the other hand, if its duties are not so discharged it will surely become a means of oppression, destructive of the rights of competent mechanics and of all citizens who have occasion to employ them, and will end in building up a monopoly for the benefit of a few, and endangering, instead of promoting, the public welfare.

It does not appear by the record before this court that rules regulating the examination of applicants prescribing the subjects on which they are to be examined, and stating the percentage of questions which must be correctly answered to entitle the applicant to a certificate, have been adopted. This board, exercising, as it must, highly important judicial functions affecting the rights of persons and property, should, for its own protection, and for the protection of the rights of applicants, keep a record of its proceedings in every case, and for the further reason that in case determinations are reviewed, a full return may be made of all the facts and evidence on which the determinations are founded.

For the reasons given the determination in this case must be annulled, and the board is directed to rehear the application of the relator. Fifty dollars costs and disbursements are awarded in favor of the relator and against the board.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Proceedings annulled and rehearing directed, with fifty dollars costs and disbursements to relator.